**In re Terrance CAMP and Garland Camp, Debtors.**

**Bankruptcy No. 86–05165F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 22, 1987.

Arthur P. Liebersohn, Philadelphia, Pa., for the debtors, Terrance Camp and Garland Camp.

Mary Benefield Seiverling, Asst. Counsel, Pennsylvania Dept. of Public Welfare, Office of Fraud and Abuse Investigation and Recovery, Civ. Recovery Div., Harrisburg, Pa., for Pennsylvania Dept. of Public Welfare.

Edward Sparkman, Philadelphia, Pa., Trustee.

## OPINION

BRUCE FOX, Bankruptcy Judge:

In this chapter 13 bankruptcy case, the Commonwealth of Pennsylvania, Department of Public Welfare ("DPW") has filed a proof of claim through which it asserts a right to receive reimbursement for public assistance benefits provided to the debtors and, therefore, a right to share pro rata in the distribution to be made to unsecured creditors under the debtors' chapter 13 plan. The debtors have objected to DPW's proof of claim, asserting that the claim should be disallowed because DPW has no *in personam* right of reimbursement against them under applicable state law.

In order to resolve this dispute I must begin by analyzing the nature of DPW's peculiar statutory right of reimbursement. *See* 62 P.S. § 1974. As one Pennsylvania court has concisely explained:

> The legal relationship between the Commonwealth and the recipient of [public assistance] is complex. The Common-

under section 1301(c)(2) at the time of or the grant of such a motion for relief prior to the confirmation of the plan.

wealth has assumed the duty of providing assistance to persons who meet certain eligibility requirements ... In return, the Commonwealth has imposed ... the duty to repay the state from real or personal property owned during the time period in which such assistance was granted, or from property which resulted from a right or cause of action which existed during that time period.

*Reese v. Commonwealth, Department of Public Welfare,* 62 Pa.Cmwlth. 579, 581, 437 A.2d 479, 480 (1981) (citations omitted). After clarifying the nature of DPW's claim under state law, *see In re Stephen Smith Home for the Aged,* Adv. No. 86–0626F, slip op. (Bankr.E.D.Pa. September 14, 1987), I must then apply principles of bankruptcy law in order to decide whether DPW's claim is allowable.

For the reasons set forth below, I conclude that: (1) DPW has a right of reimbursement restricted to certain property owned by the debtors at the time of their bankruptcy filing; (2) although, under state law, DPW may proceed only against property of the debtors and not the debtors personally, DPW nonetheless has an allowable unsecured claim; and (3) a further hearing is necessary to properly determine the amount of DPW's allowed unsecured claim.

## I.

The material facts in this case are undisputed.

The debtors in this case are Terrance Camp and Garland O. Camp, husband and wife. In September 1973, Mr. and Mrs. Camp jointly acquired the real property located at 7860 Saturn Place, Philadelphia, PA 19153. After acquiring the property,

Mr. and Mrs. Camp received public assistance from DPW for the periods of time and in the amounts listed below:

| | | |
|---|---|---|
| 2-4-74 to 4-14-77 | $13,250.30 | |
| 4-28-77 to 8-29-78 | 4,703.50 | |
| 4-5-78 to 10-27-78 | 3,173.70 | |
| | $21,127.50 | TOTAL ASSISTANCE RECEIVED |

On February 1, 1974, Mrs. Camp signed a reimbursement agreement (known as a form PA–9) which provided for a confession of judgment in favor of DPW in the amount of $2,000.00. Based on the executed PA–9 form, judgment by confession was entered in January 1976 at No. 3578, January Term 1976 (C.P.Phila.) and the judgment was revived on February 27, 1981 and December 4, 1985.

On November 7, 1986, Mr. and Mrs. Camp (hereinafter "debtors") filed a chapter 13 bankruptcy petition. In their chapter 13 schedules, they listed DPW as an unsecured creditor holding a debt in an unknown amount. On December 8, 1986, DPW filed a proof of claim in the amount of $21,148.39. Paragraph 10 of DPW's proof states that there is no security interest for the claim other than the $2,000.00 judgment originally confessed in 1976. On March 12, 1987, the debtors filed an objection to DPW's proof of claim and a motion to avoid DPW's judicial lien pursuant to 11 U.S.C. § 522(f).[1] In response, DPW took the position that it has an allowable secured claim in the amount of $2,000.00 and an allowable unsecured claim in the amount of $19,148.39. At the hearing held in these matters, the debtors withdrew their motion to avoid DPW's judicial lien and focused their attack on the validity of DPW's unsecured claim.[2]

---

1. Since Mr. Camp did not sign the PA–9 form, it would appear that the judgment was entered against Mrs. Camp only. The record in this case does not reveal the exact nature of Mr. and Mrs. Camp's joint ownership. However, if Mr. and Mrs. Camp own their property as tenants by the entireties, the judgment against Mrs. Camp gives rise only to a lien on her survivorship interest in the property. *See In re Hope,* 77 B.R. 470 (Bankr.E.D.Pa.1987).

2. At the hearing, the court also denied, without prejudice, the debtors' objection to the secured component of DPW's claim. Subsequently, the debtors filed a separate objection to payment of the secured claim asserting that no distribution should be made on DPW's secured claim because their plan does not provide for payment of the claim. *See In re Evans,* 66 B.R. 506 (Bankr.E.D.Pa.1986), *aff'd,* 77 B.R. 457 (E.D.Pa. 1987). That objection will be resolved separately from the objection to the unsecured component of DPW's claim.

## II.

DPW's right to seek reimbursement of public assistance benefits is statutorily based. *See* 62 P.S. § 1974. Section 1974(a) provides, in pertinent part:

[T]he real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted. Any public body or public agency may sue the owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children.

DPW has issued regulations implementing section 1974(a). *See* 55 Pa.Code §§ 257.21 *et seq.* The regulations summarize the policies which underlie the statute as follows:

There are two closely related reasons for reimbursement. The first rests on the basic principle that public assistance supplements resources and that whenever assistance is granted in lieu of the utilization of resources, the assistance should be repaid wherever these resources become available. The second reason relates to the financing of the program. Reimbursement results in a recovery of money that is then available for redistribution as assistance, thereby reducing to this extent the need for additional tax revenues.

55 Pa.Code § 257.21(a)(1); *see, e.g., Shearer v. Moore*, 277 Pa.Super. 70, 419 A.2d 665 (1980). *See generally Charleston v. Wohlgemuth*, 332 F.Supp. 1175 (E.D.Pa.1971) (court notes that testimony concerning adverse effect of reimbursement policies on welfare recipients is impressive, though not legally determinative), *aff'd mem.*, 405 U.S. 970, 92 S.Ct. 1204, 31 L.Ed.2d 246 (1972).

The reimbursement obligation imposed by section 1974(a) has several singular characteristics. Most notable is the statutory expression that it is the real and personal property of the recipient (or of a person legally obligated to support the recipient)[3] that is liable for repayment of the money expended by the government in support of the recipient. The text of the provision lends strong support to the debtors' contention that they have no personal liability to repay DPW for the assistance they received. *Accord, Commonwealth v. Allison*, 12 D. & C.2d 81, 86 (C.P.Montg.1958) (under section 1974(a), "the property of [the recipient] may be made liable for the assistance given ... [e]ssentially it is a proceeding in rem...."). This conclusion is also supported by the analysis in *Reese v. Commonwealth Department of Public Welfare.* In *Reese,* the recipient received public assistance for 80 weeks while his application for unemployment compensation benefits was pending. After waiting the 80 weeks, the recipient finally received 32 weeks' worth of unemployment compen-

---

**3.** *See Hunter v. Commonwealth of Pennsylvania, Department of Public Welfare,* 98 Pa.Cmwlth. 630, 511 A.2d 954 (1986) (non-custodial parent who owned property is subject to DPW reimbursement claim under section 1974(a) even though he had fully complied with order of court directing him to pay child support); *Commonwealth of Pennsylvania, Department of Public Welfare v. Whitebread,* 3 Pa.Cmwlth. 429, 284 A.2d 152 (1971) (same as *Hunter*). *See generally Department of Public Assistance of the Commonwealth of Pennsylvania v. Sharago,* 381 Pa. 74, 112 A.2d 162 (1955) (prior to amendment enacted in 1951, under section 1974(a), DPW's right to reimbursement existed only against the recipient of the assistance and not against a person who owed the recipient a duty of support); *Commonwealth v. Allison,* 12 D. & C.2d 81, 84–85 (C.P.Montg.1958) (stating same principle as *Sharago* ). From this point, the discussion will not distinguish between a recipient and a person legally obligated to support a recipient.

sation benefits. The issue was whether the reimbursement obligation to DPW was for 80 weeks or 32 weeks of public assistance. The court ruled in favor of DPW, reasoning as follows:

In this case, the petitioner possessed a right or cause of action which arose out of his claim for unemployment compensation benefits. This right or cause of action existed when he applied for general assistance and did not expire until his claim was paid on May 21, 1980. On that date, the right or cause of action resulted in "ownership" of personal property in the form of cash. Under [section 1974(a)], that personal property was then "liable" for the expenses of support which were incurred by the Commonwealth during the life of the right or cause of action, *i.e.*, the 80–week period....

62 Pa.Cmwlth. at 581, 437 A.2d at 480 (footnote omitted).

The concept that DPW's reimbursement claim runs against the property of the recipient is wholly consistent with the policies quoted above which underlie the reimbursement requirement. Generally, DPW expects reimbursement only from property which it eschewed from requiring the recipient to liquidate (presumably in recognition of the fact that all persons have a legitimate need to have some minimal resources at their disposal), or from property which was not immediately capable of liquidation. Accordingly, it is the ownership of property during the period of time in which assistance is provided that triggers the statutory liability. 55 Pa.Code § 257.21(c)(3) ("[L]iability will begin with the first assistance payment following the acquisition of property or a right to property or the date a resource was due, whichever is appropriate to the kind of property involved"). If a recipient owns no property at the time of the receipt of the assistance, there is no reimbursement liability. *Commonwealth, Department of Public Assistance v. Hornacek*, 347 Pa. 596, 32 A.2d 761 (1943) (DPW's assumpsit complaint based on section 1974(a) held not self-sustaining where it did not allege that the property sought was owned by defendant at the time the assistance was rendered) (alternate holding); *In re Reiver's Estate*, 343 Pa. 137, 139, 22 A.2d 655, 656 (1941) (DPW may not recover for assistance paid during period prior to death of recipient's grandfather which resulted in an inheritance); *Bronzo's Estate*, 51 Lack.Jur. 129 (O.C.Lack.1949) (based on premise that recipient's right of action arising from a tort is not "property" within meaning of section 1974(a),[4] court denies DPW reimbursement for assistance provided after cause of action arose but before settlement of the claim); *Commonwealth v. Johnson*, 58 Montg.L.R. 90, 92 (C.P.Montg.1946) (in order to prevail, DPW must "prove that the [recipient] has real or personal property acquired during the time benefits were received"); *Department of Public Assistance of Commonwealth of Pennsylvania v. Zulick*, 60 York L.R. 22 (C.P. York 1942) (DPW denied judgment on the pleadings where it alleged only that the recipient owned property at the time of her death rather than during the time period that assistance was paid). Thus, liability is triggered by the recipient's ownership of or right to receive reimburseable property; recovery by DPW is limited to those benefits paid after, not before, that date. Similarly, DPW may not seek reimbursement from property acquired by the former recipient after the termination of assistance payments. 55 Pa.Code § 257.22 (definition of "ownership of property"); *In re Reiver's*

---

**4.** That premise is no longer valid today. Prior to 1951, the statute provided that property was liable if "the right to ownership of such property existed or was acquired during the time" assistance was provided. *See* 62 P.S. § 1974, Historical Note. The 1951 amendment to 62 P.S. § 1974(a) added the language which refers not only to property, but also to "a right or of cause of action [which] existed" during the period of assistance. DPW has detailed regulations which list various types of rights and causes of action (e.g., personal injury claims, unemployment compensation, workmen's compensation) and which spell out the date on which the recipient's reimbursement obligation commences. For example, for a personal injury claim, the regulations provide that the reimbursement obligation commences on the date of the injury. *See* 55 Pa.Code § 257.23.

*Estate; Gemill's Estate,* 57 D. & C. 2d 151 (O.C.York 1946).

DPW's statutory powers include the right to bring suit to obtain reimbursement. *See Shearer v. Moore,* 277 Pa.Super. at 73, 419 A.2d at 667. *See also* 62 P.S. § 1975. DPW's regulations set out other procedures it employs in obtaining a lien against the real property of a recipient which is subject to reimbursement as well as to protect its reimbursement rights against various types of personal property. *See* 55 Pa.Code §§ 257.24.

Where suit has been brought by DPW, the statute contains another significant restriction on the agency's right to reimbursement. DPW is expressly prohibited from executing on its judgment against the real and personal property of the recipient which comprises his home and furnishings during the lifetime of the recipient, his or her surviving spouse and dependent children. *Accord,* 55 Pa.Code § 257.21(d)(1). In other respects, once DPW obtains a judgment, it has the rights of an ordinary judgment creditor subject to non-bankruptcy federal and state exemptions, *see Philpott v. Essex County Welfare Board,* 409

U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), and bankruptcy exemptions, *see Gardner v. Commonwealth of Pennsylvania, Department of Public Welfare,* 685 F.2d 106 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982). And, its lien may be extinguished, like any other judgment lien, if the recipient's property is sold at sheriff's sale. *Commonwealth v. Udzienicz,* 353 Pa. 543, 46 A.2d 231 (1946).

Based on the foregoing peculiar characteristics of DPW's reimbursement rights, the debtors argue that they have no personal liability to the agency and therefore, DPW's unsecured claim should be disallowed. In effect, they argue that in the absence of a lien, DPW has no "claim" against them in the bankruptcy sense.

I agree with the debtors that they have no personal liability to DPW.[5] At the time of the bankruptcy filing, DPW had the right to bring an appropriate action to obtain reimbursement only from property the debtors owned during the period in which they received assistance, subject to the limitations on execution set forth in the

---

**5.** DPW suggests that wholly apart from their statutory reimbursement obligation, the debtors have a separate reimbursement obligation arising from the common law, thus implying that the debtors are personally liable to repay the assistance received. I note that this position is at variance with that taken by the agency in *In re Holt,* 11 B.R. 797, 802 (Bankr.W.D.Pa.1981). The ultimate authority for DPW's argument in this case is the following passage in *In re Waits' Estate,* 336 Pa. 151, 156, 7 A.2d 329, 331 (1939): "[A]t common law, there is an implied duty on the part of a recipient of public assistance, or his estate, to make reimbursement." This statement has been quoted or paraphrased in dictum in numerous later cases. *E.g., Kossman v. Commonwealth, Department of Public Welfare,* 69 Pa.Cmwlth. 17, 450 A.2d 239 (1982); *Shearer v. Moore,* 277 Pa.Super. 70, 419 A.2d 665 (1980); *Commonwealth, Department of Public Welfare v. Hornacek,* 347 Pa. 596, 32 A.2d 761 (1943). However, my examination of the caselaw convinces me that DPW's right of reimbursement is exclusively statutory. Significantly, the statement in *Waits' Estate* itself was dictum. The case was decided under a statute which preceded the enactment of 62 P.S. § 1974. The predecessor statute contained no provision regarding a recipient's reimbursement obligation. *Waits' Estate* held only that where the statute was silent, the legislature had not intended to override the common law rule. By comparison, 62

P.S. § 1974 expressly limits DPW's right of reimbursement. Subsequently, in *In re Reiver's Estate,* 343 Pa. 137, 22 A.2d 655 (1941), the Pennsylvania Supreme Court, after acknowledging the existence of DPW's common law rights stated:

> Originally recovery could have been had even out of property acquired by the beneficiary subsequent to his receiving assistance ... [Under section 1974(a) ], it is limited to property owned by him during the time the assistance was rendered or his right to ownership of which existed or was acquired during such time.

343 Pa. at 139, 22 A.2d at 656 (citations omitted). In *Reiver's Estate,* the court held that a recipient was not liable to repay DPW for assistance received prior to the date he acquired his interest in his grandfather's estate. Had there been a distinct common law right of recovery, DPW would have prevailed. *See also Commonwealth, Department of Public Assistance v. Hornacek.* In short, while the right of reimbursement may have its origins in the common law, *but see Directors of Poor and of House of Employment v. Nyce,* 161 Pa. 82, 28 A. 999 (1894); *Stewart's Estate,* 38 Pa.Super. 177 (1909), DPW's rights are now exclusively governed by statute. *See also* 1 Pa.C.S. §§ 1503.

second sentence of section 1974(a). However, it does not follow, as the debtors assert, that DPW's unsecured claim should be disallowed.

The Bankruptcy Code defines a claim as including a

right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured....

11 U.S.C. § 101(4). The Code's specific rules of construction also state that the term "'claim against the debtor' includes claim against property of the debtor." 11 U.S.C. § 102(2). The legislative history suggests that where a creditor's only rights are against the debtor's property, then those rights

would give rise to a claim that would be treated as a claim against the debtor personally, for the purposes of the bankruptcy code. However, it would not entitle the holders of the claim to distribution other than from the property in which the holder had an interest.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 315 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6272.

Sections 101(4) and 102(2) of the Bankruptcy Code undercut the debtors' argument that DPW's right to reimbursement is not allowable as an unsecured claim.

Moreover, in a functional sense, DPW has an unsecured claim, albeit one with unique characteristics. If the debtors owned any property subject to reimbursement under section 1974(a) as of the date of the debtors' bankruptcy filing, the agency had the right to initiate a lawsuit to attempt to recover the assistance paid to the debtors and thereby obtain a judgment through which it could enforce its claim against the reimburseable property. In this respect, DPW was not materially different than any classic unsecured claimant in a bankruptcy case. Of course, DPW was subject to restrictions not applicable to the other unsecured creditors: *i.e.*, (1) unlike other creditors to whom the debtors were personally liable, DPW could only execute against specific property and (2) with respect to certain property owned by the debtors, DPW's right to execute on any judgment obtained might not yet have matured.[6] These restrictions do not, however, mean that DPW has no "claim." Rather, DPW has an unsecured claim enforceable by remedies which are restricted under state law. For these reasons, I reject the debtors' argument that DPW has no allowable claim.[7] *See Matter of Metz*, 820 F.2d 1495 (9th Cir. 1987) (chapter 13 plan may include mortgage claim in plan even though underlying personal liability was discharged in prior case under chapter 7); *In re Lewis*, 63 B.R.

---

**6.** A claim is considered unmatured if

the right to payment exists at the outset, but the time of payment is deferred. The maturation occurs with the mere passage of time ... [b]ut no outside future occurrence in the contemplation of the parties is necessary to trigger the underlying obligation to pay.

*In re Lambert*, 43 B.R. 913, 923 (Bankr.D.Utah 1984). Under 11 U.S.C. § 502(b)(1), a duly filed proof of claim shall be allowed except to the extent that, *inter alia* "such claim is unenforceable against the debtor and property of the debtor, under any agreement of applicable law *for a reason other than because such claim is contingent or unmatured."* (emphasis added). Thus, the fact that state law delays DPW's right to ultimately enforce its right of reimbursement means only that claim the is unmatured and not that it should be disallowed.

I note further that although DPW's claim is unmatured, it is not contingent. A claim is contingent only if liability itself attaches upon the occurrence of some future event. *E.g., Matter of Bowers*, 16 B.R. 298 (Bankr.D.Conn.1981).

Under 62 P.S. § 1974(a), only enforcement of DPW's rights, not the liability itself is dependent on the occurrence of some future event.

**7.** The debtors also assert that the claim should be disallowed to the extent DPW's unsecured claim is based on the execution of the PA–9 form which was confessed as a $2,000.00 judgment. Relying on *Swarb v. Lennox*, 314 F.Supp. 1091 (E.D.Pa.1970), *aff'd*, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), they argue that confession of judgment against individuals with an annual income of less than $10,000.00 violates due process. I fail to see the relevance of *Swarb* in this case since the unsecured claim is not the subject of a confessed judgment. In any event, the constitutionality of DPW's practice of confessing judgment in order to effect a lien on reimbursable real property was upheld in *Charleston v. Wohlgemuth*, 332 F.Supp. 1175 (E.D.Pa.1971), *aff'd mem.*, 405 U.S. 970, 92 S.Ct. 1204, 31 L.Ed.2d 246 (1972).

90 (Bankr.E.D.Pa.1986) (claim within meaning of Bankruptcy Code includes encumbrance against property even though debtor has no personal liability).

### III.

Having concluded that DPW's unsecured claim should not be disallowed solely because the debtors have no personal liability, my inquiry is not ended. It is necessary to acknowledge that DPW has an extremely unorthodox unsecured claim—one that, although it has not attached as a lien, is enforceable only from specific property of the debtor. Ordinarily, the rights of a debtor and his creditors are evaluated as of the date of the bankruptcy filing. Given the unique characteristics of DPW's rights under state law, the amount of its unsecured claim in a bankruptcy proceeding must reflect the value of the property which is subject to its reimbursement claim. *Cf.* 11 U.S.C. § 506.

A hypothetical elucidates this point. Assume that a recipient received $10,000.00 of assistance while owning no property other than his residence. At some point after terminating assistance, the former recipient moves out of the property. Once the property is no longer residential, DPW can look to the property immediately for reimbursement. Assuming further that DPW had not previously obtained a lien on the property by the entry of a PA–9 form confession of judgment, DPW could then file a legal action, obtain a $10,000.00 judgment and proceed to execute. If, at the time of execution, the property has no prior liens, is only worth $5,000.00 and brings that sum at sheriff's sale, DPW has no further right to collect the balance of the assistance provided. In these circumstances, after execution, DPW has no further remedy and therefore, no further claim against the former recipient or his property under state law in any meaningful sense.

The hypothetical illustrates that at any given point in time, DPW has no "claim" in excess of the value of the property which is subject to reimbursement under 62 P.S. § 1974(a). The filing of a bankruptcy petition represents a traditional point when the rights of creditors are evaluated. Since DPW's unsecured claim is *in rem* rather than *in personam*, it makes sense to treat the filing of the bankruptcy case as the functional equivalent of the sheriff's sale in the above hypothetical. If the debtor were to liquidate the property which is subject to reimbursement, DPW's claim would be commensurate with the value of the property. If the property will not be liquidated in the bankruptcy, the value of DPW's claim can be based upon a hypothetical liquidation. *Cf.* 11 U.S.C. § 1325(a)(4). This analysis is also consistent with the legislative history which emphasizes that a creditor with rights against a debtor's property (and not against the debtor personally) may look only to the property for reimbursement.[8]

In applying these principles, one must carefully distinguish the determination of the amount of DPW's allowed unsecured claim from the distribution DPW will receive in the bankruptcy case. Indeed, while the amount of DPW's allowed unsecured claim may be measured by the value of specific property, a chapter 13 debtor will often exempt that property rather than liquidate it. In the absence of a liquidation, the distribution to which DPW will be entitled is governed by 11 U.S.C. §§ 1322 and 1325. Within the framework

---

**8.** Another hypothetical is helpful. If an individual inherits a real property which is subject to a note and mortgage, it is obvious that the individual owns property subject to the debt, but is not personally liable. Assume that the property is worth $5,000.00 and is subject to a $10,000.00 mortgage. If the owner files a bankruptcy petition and invokes 11 U.S.C. § 506, the court would determine that the creditor's allowed secured claim is $5,000.00. 11 U.S.C. § 506(a); *see e.g., In re Everett,* 48 B.R. 618 (Bankr.E.D.Pa. 1985). The balance of the claim would not be a valid allowed unsecured claim since there is no underlying liability under state law. *See* 11 U.S.C. § 502(b)(1). Similarly, here, DPW's claim (though unsecured rather than secured) cannot, under state law, exceed the value of the property which is subject to reimbursement. Any liability in excess of the value of the property cannot be recognized as a claim.

of those Code provisions, the debtor's plan will determine the distribution DPW will receive on its unsecured claim.[9]

In this case, no evidence was presented describing or valuing any property owned by the debtors at the time of their bankruptcy filing which may be subject to DPW's claim or the date such property was acquired. Apparently, the litigants did not anticipate the precise manner in which the court would resolve their dispute. Since the issue is conceptually difficult and one of first impression, I conclude that it would be fair to both sides to reopen the record. *See also* Bankr. Rule 3008 (party in interest may seek reconsideration of order allowing or disallowing claim against the estate). Application of the principles discussed above may lead the parties to agree on the amount of DPW's allowed unsecured claim. If not, I will conduct an additional hearing and allow further evidence on the issue.

An order consistent with this opinion will be entered.

---

9. Without now passing upon the issue, I note that in light of the differences between DPW's unsecured claim and more traditional unsecured claims, a debtor might be allowed to invoke 11 U.S.C. § 1322(b)(1), which permits a debtor to make different classifications of unsecured claims provided that there is no unfairness in discriminating against any particular class. *Cf. Matter of Jersey City Medical Center,* 817 F.2d 1055, 1061–62 (3d Cir.1987) (unsecured claims may be separately classified under 11 U.S.C. § 1129 if classification is reasonable). If the debtor's plan does not provide for the liquidation of the property subject to DPW's *in rem* claim, a debtor might propose no distribution to DPW. Of course, in such a case, the debtor's obligation to DPW may not be discharged as the claim would not be provided for by the plan. *See* 11 U.S.C. § 1328(a). DPW would be relegated to enforcing its right of reimbursement, if any, under state law once the stay imposed by section 362(a) has terminated.

I note further that many chapter 13 debtors file plans which create a limited fund for their unsecured creditors and have little interest in how the fund is divided among the creditors filing proofs of claim. In such a case, the issues involving the allowability and amount of DPW's unsecured claim may be much more significant to the other unsecured creditors than to the debtor.